RAFAEL BUSCAGLIA, en su carácter de TESORERO DE PUERTO RICO, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, recurrido; CARMEN y MARÍA DE LA CRUZ DEL TORO RODRÍGUEZ, interventoras.

Núm. 155.—*Sometido:* Enero 14, 1948. *Resuelto:* Marzo 19, 1948.

*Hon. Procurador General Luis Negrón Fernández y J. Rivera Barreras, Procurador General Auxiliar,* abogados del peticionario; *Damián Monserrat, Jr., Gabriel de la Haba y Rafael Baragaño, Jr.,* abogados de las interventoras, querellantes en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

En cumplimiento de lo ordenado por este Tribunal en mayo 28 de 1945, en el caso de *Carmen y María de la Cruz del Toro Rodríguez* v. *Tribunal de Contribuciones,* 65 D.P.R. 63, el abogado Damián Monserrat, Jr., en su carácter de apoderado de las herederas de don Fernando del Toro Saldaña, trasmitió al Tesorero de Puerto Rico la notificación jurada del fallecimiento del causante, a los efectos de que se determinara el montante de la contribución de herencia que debían pagar las herederas. En la planilla rendida a nombre de éstas los bienes fueron valorados en la suma de $186,000. En febrero 5 de 1946 el Tesorero notificó a las herederas que la valoración por él practicada ascendía a $374,731.50 e impuso a cada una de las herederas una contribución de $18,650.72, más intereses a razón del 1 por ciento mensual desde mayo 7 de 1937 hasta la fecha de su pago.

La suma reclamada por el Tesorero por concepto de intereses hasta el 28 de febrero de 1947 en que se verificó el pago, ascendió a $39,539.53.

No conformes con la liquidación de los intereses practicada por el Tesorero, las herederas apelaron para ante el Tribunal de Contribuciones, después de haber pagado las cantidades siguientes:

| | |
|---|---:|
| Importe total de la contribución | $37, 301. 44 |
| Intereses desde mayo 7, 1937 a noviembre 21, 1941 al 1 por ciento mensual | 20, 515. 80 |
| Intereses desde diciembre 1941 a febrero 28, 1946 al 6 por ciento anual | 9, 511. 88 |

La cantidad que quedó pendiente de pago, por no estar conformes las querellantes, asciende a $9,511.88, que representa la diferencia entre el 12 por ciento anual que establecía el artículo 9 de là Ley núm. 99 de 29 de agosto de 1925 (pág. 791), enmendada por la núm. 20 de abril 27 de 1933 (Leyes de 1932–33, pág. 233), y el 6 por ciento anual que fijó la sección 2 de la Ley núm. 20 de 21 de noviembre de 1941 ((2) pág. 65).

En marzo 24 de 1947 el Tribunal de Contribuciones dictó su resolución declarando con lugar la querella en todos sus extremos. No estuvo conforme el Tesorero e interpuso el presente recurso.

■■ Los cuatro señalamientos formulados por el Tesorero recurrente envuelven una sola cuestión: ¿Erró el Tribunal de Contribuciones al aplicar en la resolución de este caso las disposiciones de la Ley núm. 20 de 21 de noviembre de 1941, enmendatoria del artículo 9 de la Ley núm. 99 de 29 de agosto de 1925, enmendado por la Ley núm. 20 de 27 de abril de 1933, y al no aplicar esta última ley que era la que estaba en vigor a la fecha de la muerte del causante, ocurrida el 7 de noviembre de 1936?

El artículo 9 de la Ley núm. 99 de 1925, enmendado por la Ley núm. 20 de 1933, en lo que es pertinente disponía:

"Dichas contribuciones serán devengadas y pagaderas *dentro del término de ciento ochenta días después del fallecimiento del causante . . . . .* Si dichas contribuciones no se pagasen dentro del expresado término de ciento ochenta días, se cargarán y cobrarán intereses sobre ellas *al tipo de 1 por ciento por cada mes o fracción de mes,* y el colector u otro agente debidamente autorizado por el Tesorero, procederá, después de obtenido el consentimiento escrito del Tesorero, al cobro de las mismas, etc." (Bastardillas nuestras.)

El citado artículo 9 quedó enmendado por la Ley núm. 20 de 21 de noviembre de 1941 en la forma siguiente:

"Dichas contribuciones serán devengadas y pagaderas dentro del término de *noventa días inmediatamente siguientes a la fecha en que el Tesorero notificare a los interesados la contribución correspondiente a la herencia* . . . . Si dichas contribuciones no se pagasen dentro del expresado término de noventa días, se cargarán y cobrarán *intereses sobre ellas al tipo de 6 por ciento anual* y el colector u otro agente debidamente autorizado por el Tesorero, procederá, después de obtenido el consentimiento escrito del Tesorero, al cobro de las mismas . . . . ." (Bastardillas nuestras.)

Comparando el artículo original con la enmienda se verá que de acuerdo con el primero la contribución de herencia debía ser pagada dentro de los 180 días siguientes a la fecha del fallecimiento del causante, con intereses al 12 por ciento anual en caso de demora en el pago; y que de acuerdo con la enmienda, el pago debe hacerse dentro de los 90 días siguientes a la fecha en que el Tesorero notifique a los interesados el importe de la contribución, con intereses al 6 por ciento anual en caso de demora en el pago.

Es cierto que la ley vigente en la fecha del fallecimiento del Sr. del Toro, era la núm. 99 de 1925, enmendada en 1933, que disponía que la contribución debía ser satisfecha "dentro del término de ciento ochenta días después del fallecimiento del causante", con intereses al 12 por ciento anual en caso de mora. Y ésa sin duda alguna sería la única ley aplicable de no haber ocurrido los hechos que motivaron el litigio terminado por nuestra decisión de mayo 28 de 1945,

65 D.P.R. 63. Creemos conveniente hacer una síntesis de los hechos y antecedentes de dicho caso.

El Sr. del Toro falleció en Madrid el 7 de noviembre de 1936. En octubre 6 de 1937, la Corte de Distrito de Humacao nombró un administrador judicial de los bienes, por haberse alegado que el Sr. del Toro se encontraba ausente, ignorándose su paradero, y que no tenía representante legal en la Isla. El abogado Monserrat, nombrado por las herederas para reclamar y tomar posesión de los bienes sujetos a la administración judicial, presentó al Tesorero la notificación de defunción del causante, acompañada de una valoración de los bienes ascendentes a $186,090 y de una "Certificación en relación con la partida de defunción del causante", como prueba del fallecimiento de éste. El Tesorero practicó una retasación que ascendió a $374,009.59 e impuso a cada una de las herederas una contribución de $18,606.23, más intereses al 1 por ciento mensual desde mayo 1, 1937 hasta su pago. No estando conformes, las herederas pidieron a la Corte de Distrito de Humacao que ordenara al administrador judicial que apelara ante el Tribunal de Contribuciones, para lo cual hubiera sido necesario pagar la suma con la cual estaban conformes las herederas, la que ascendía a $23,395. Alegaron las herederas que ellas no tenían dinero en efectivo para poder hacer la consignación y que los únicos bienes con que podían contar estaban bajo la custodia de la Corte de Distrito. Se opuso el administrador judicial por no haberse acreditado debidamente el fallecimiento del ausente, la Corte declaró sin lugar la solicitud y las herederas quedaron imposibilitadas para poder apelar.

Al tener conocimiento de la solicitud de las herederas, el administrador judicial informó al Tesorero que los bienes hereditarios estaban "congelados" por orden del Secretario del Tesoro Federal; que para poder radicar una declaración para el pago de la contribución de herencia es nece-

sario estar en posesión de los bienes; y que el apoderado no estaba facultado para hacer una declaración de bienes que no poseía, los cuales estaban *in custodia legis* y, además, congelados. El apoderado de las herederas, conforme con lo expuesto por el administrador judicial, pidió al Tesorero que dejase sin efecto todo lo actuado, a lo que se negó dicho funcionario, insistiendo en que las herederas debían pagar la contribución. A petición de las herederas, la corte de distrito decretó el cese de la adminstración y, en julio 6 de 1943, los bienes fueron entregados al administrador de las herederas. En agosto 3, 1943 el administrador radicó la notificación de defunción y pidió al Tesorero que fijase el importe de la contribución. Pocos días más tarde, el Tesorero devolvió los documentos al administrador, informándole que la contribución ya había sido liquidada en junio 29 de 1942 a petición del licenciado Monserrat. Habiéndose negado el Tesorero a reconsiderar su decisión, acudieron las herederas en apelación ante el Tribunal de Contribuciones; y al ser declarada sin lugar la querella por ellas radicada, trajeron el caso ante esta Corte. Las cuestiones planteadas fueron resueltas en la forma siguiente:

1. La notificación de defunción hecha por el licenciado Monserrat no era válida ni obligaba a las herederas, porque no estando éstas en posesión ni encargadas de la disposición y división de los bienes no estaban obligadas a hacer tal notificación. (Artículo 5, Ley núm. 99 de 29 de agosto de 1925, enmendado por la Ley núm. 136 de mayo 6 de 1939.) Estando el caudal hereditario *in custodia legis,* como bienes de un ausente, la obligación de notificar el fallecimiento recayó sobre el administrador judicial. Fué un error el sostener que la notificación hecha por Monserrat era legalmente eficaz.

2. Estando los bienes *in custodia legis,* en poder de un administrador judicial como bienes de un ausente y no en

poder de un albacea o administrador testamentario, ni los herederos ni el Tesorero podían, sin la previa autorización de la Corte, vender bienes y levantar los fondos necesarios para pagar la contribución de herencia. (Artículo 5 A, Ley núm. 99 de 1925, enmendado por Ley núm. 34 de 1935 ((2) pág. 421).)

3. La petición radicada ante el Tesorero en agosto 9 de 1943 por el administrador de los bienes, nombrado por las herederas, debió ser considerada como la única petición legalmente sometida al Tesorero para la liquidación de la contribución de herencia.

4. El Tesorero, después de recibir la notificación que le enviara el administrador de las herederas, no cumplió con los requisitos del artículo 6 de la Ley de Contribuciones Sobre Herencias, enmendado por la Ley núm. 20 de 1941, según el cual el Tesorero estaba obligado a hacer "una justa y adecuada 'valoración" de los bienes hereditarios y a notificar al administrador el resultado de la tasación y el importe de la contribución. El propósito del Tesorero al así actuar fué el de privar a las herederas de su derecho de apelación por haber transcurrido el término legal.

5. El Tesorero debió recibir y considerar la solicitud radicada en agosto 9 de 1943, por el administrador de las herederas, como una solicitud original y proceder a la valoración de los bienes y a la imposición de la contribución, dando así una oportunidad a las herederas para apelar ante el Tribunal de Contribuciones de la resolución administrativa del Tesorero, habida cuenta de que de conformidad con la sección 4 de la Ley núm. 169 de 1943 (pág. 601) la jurisdicción de dicho Tribunal no puede ser invocada "hasta que sobre el asunto en discusión haya recaído la correspondiente resolución administrativa por parte del Tesorero de Puerto Rico, de acuerdo con la Ley". No existiendo una resolución administrativa del Tesorero, las herederas no tenían derecho a apelar y por consiguiente la querella por ellas for-

mulada lo fué prematuramente. El caso fué devuelto al Tribunal de Contribuciones con instrucciones para desestimar la querella por falta de jurisdicción, sin perjuicio de los derechos que pudieran tener las herederas a renovar su petición ante el Tesorero, para la valoración de los bienes y la determinación del importe de la contribución, y para apelar si no estuvieren conformes con la resolución administrativa dictada por el Tesorero.

Procederemos ahora a resolver la cuestión en controversia. Es cierto que la ley vigente en la fecha del fallecimiento del causante era la núm. 99 de 29 de agosto de 1925, enmendada por la núm. 20 de 27 de abril de 1933, artículo 9, supra, pero también es cierto que el único cómputo válido de la contribución a ser pagada en el presente caso no le fué notificado a las herederas hasta el 5 de febrero de 1946. Hasta ese momento las herederas no estuvieron en condiciones de saber el montante de la contribución que debían pagar. El Tesorero no podía autorizar que se procediera al cobro de las contribuciones después de vencido el plazo de los 180 días siguientes al fallecimiento del causante, porque no fué hasta el 5 de febrero de 1946 que se le notificó a las contribuyentes la valoración hecha por el Tesorero. Fué desde esa fecha que las contribuyentes estuvieron en condiciones de poder acudir a los tribunales en solicitud de revisión de la resolución administrativa del Tesorero. El artículo 7 de la misma Ley núm. 99 de 1925, enmendado por la Ley núm. 72 de 1936 ((1) pág. 371), disponía que "dentro de los treinta días después de haberse ultimado la valoración y cómputo de la contribución podrá cualquier persona o beneficiario a quien ésta afecte apelar contra dicha valuación y cómputo de la contribución a la Junta de Revisión e Igualamiento". En febrero 5 de 1946, fecha en que por primera vez se notificó a las herederas la valoración y cómputo practicados por el Tesorero, la ley que regía era el ar-

tículo 7 de la Ley núm. 99 de 1925, en la forma en que quedó enmendado por la Ley núm. 20 de 21 de noviembre de 1941, supra, el cual dispone:

"*Artículo 7.*—Cuando una persona afectada por la valuación o el cómputo antes referidos no estuviere conforme con cualesquiera de ellos, o cuando por cualquier motivo creyere que no debe pagar total o parcialmente la contribución de herencia que a base de tales valuación y cómputo le notificare el Tesorero, y deseare apelar para ante el Tribunal de Apelación de Contribuciones, dentro de los noventa días siguientes a la fecha en que el Tesorero le notificare la contribución deberá pagar la parte de ésta con la cual estuviere conforme, y dentro de los treinta días siguientes a dicho pago deberá radicar su apelación contra la parte con la cual no estuviere conforme, por medio de la querella dispuesta por la ley creando dicho Tribunal de Apelación de Contribuciones, *Disponiéndose,* que éste no adquirirá jurisdicción a menos que (1) el pago de la contribución no impugnada se hubiere realizado dentro del plazo de noventa días antes expresado y (2) el recibo de dicho pago o su copia certificada se hiciere formar parte de la querella."

Ya hemos visto que el artículo 9 de la misma Ley, según fué enmendado en 1941, supra, dispone que las contribuciones deberán ser pagadas "dentro del término de noventa días inmediatamente siguiente a la fecha en que el Tesorero notificare a los interesados la contribución correspondiente a la herencia".

Las herederas estuvieron conformes en pagar y pagaron intereses sobre el montante de la contribución, al 12 por ciento anual, desde la fecha del fallecimiento del causante hasta el 21 de noviembre de 1941, fecha en que comenzó a regir la ley que redujo los intereses a 6 por ciento anual. Desde esa fecha hasta la del pago, las contribuyentes pagaron los intereses al tipo de 6 por ciento anual. Alegan las contribuyentes interventoras que ellas han cumplido lo preceptuado por la ley y que el recurso incoado por el Tesorero debe ser desestimado. A nuestro juicio les asiste la razón.

Las herederas no son responsables en manera alguna de la dilación habida en el pago de la contribución como consecuencia de la administración judicial de los bienes y de la congelación de los bienes hereditarios durante la emergencia de la Segunda Guerra Mundial. No obstante estar libres de responsabilidad, las herederas han pagado intereses al 12 por ciento anual desde la fecha de la muerte del causante hasta la fecha en que por disposición legal se redujo el interés al 6 por ciento anual. Durante todo ese período—noviembre 7, 1936 a noviembre 21 de 1941, cinco años y catorce días—los bienes hereditarios estuvieron bajo la custodia de un administrador judicial y congelados por orden del Gobierno Federal.

Tan pronto como terminó la administración judicial y los bienes fueron entregados a las herederas, éstas, en agosto 3 de 1943—estando ya en vigor la Ley núm. 20 de 21 de noviembre de 1941—enviaron al Tesorero la notificación de defunción y solicitaron la valoración de los bienes y el cómputo de la contribución. El Tesorero, insistiendo en su error de que la notificación hecha por el Lic. Monserrat era válida, se negó a aceptar la notificación y a practicar la valoración y el cómputo, tratando al así proceder de privar a las contribuyentes de su derecho a recurrir para ante el Tribunal de Contribuciones. Fué necesario que este Tribunal devolviese el caso al Tribunal de Contribuciones para proteger los derechos que pudieran tener las herederas. Si el Tesorero hubiese aceptado la notificación que le fué hecha en agosto 3 de 1943 y hubiese practicado la valoración y el cómputo dentro del término legal, las herederas hubieran podido pagar entonces el importe total de la contribución, sin tener que pagar interés de clase alguno por el período desde agosto 3 de 1943 a febrero 28 de 1946, fecha en que las herederas pudieron por fin pagar la contribución. El Tesorero no puede aprovecharse ni de la dilación motivada por la administración judicial ni por la congelación de los

biencs hereditarios, y mucho menos de su propio error, para privar a las herederas de los beneficios de la ley vigente en la fecha en que a las herederas les fué legalmente posible cumplir con la ley.

Si las herederas interventoras estaban o no obligadas a pagar las sumas que pagaron por concepto de intereses o si tienen o no derecho a reclamar la devolución total o parcial de las sumas pagadas, son cuestiones que no debemos considerar por no haber sido planteadas por las interventoras ni resueltas por el tribunal inferior.

*La resolución recurrida será confirmada.*